**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Irwin FRUCHTMAN, Defendant-
Appellant.**

**No. 19248.**

United States Court of Appeals,
Sixth Circuit.

Feb. 9, 1970.

nett Williams, Steven M. Umin, Washington, D. C., on the brief, for appellant.

Gerald E. McDowell, Atty., Department of Justice, Washington, D. C., Will Wilson, Asst. Atty. Gen., Edward T. Joyce, Atty., Department of Justice, Washington, D. C., on the brief, for appellee.

Before WEICK, EDWARDS, and COMBS, Circuit Judges.

COMBS, Circuit Judge.

The appellant, Irwin Fruchtman, was charged in a four-count indictment with two conspiracies and two substantive offenses growing out of his alleged interference with a Federal Trade Commission investigation of pricing practices in the steel industry. Counts III and IV were dismissed prior to trial. Count I charged a conspiracy to violate 18 U.S.C. § 1505,[1] and in that count Louis E. Moultane and Milton S. Cohen were also named as defendants. Cohen was granted a severance and testified for the Government in the case against Fruchtman and Moultane; the indictment against him was dismissed after their trial. The court directed a verdict of acquittal as to Moultane at the close of the Government's evidence. The jury found Fruchtman guilty on the conspiracy count and also of the substantive offense charged in Count II. The court imposed sentences of a year and a day on each count to run concurrently and a fine of $10,000.

Fruchtman, at the time of his indictment, was vice president of Donovan Wire & Iron Company of Toledo, Ohio, a company which processes, warehouses, and distributes steel. During the years 1958 through 1962, Donovan purchased steel for resale from McLouth Steel Cor-

Vincent J. Fuller and Robert L. Weinberg, Washington, D. C., Edward Ben-

---

1. 18 U.S.C. § 1505 in pertinent part provides: "Whoever corruptly, or by threats or force, or by threatening letter or communication, endeavors to influence, intimidate, or impede any witness in any proceeding pending before any department or agency of the United States, * * *; or

\* \* \* \* \*

"Whoever corruptly, or by threats or force, or by any threatening letter or communication influences, obstructs, or impedes, or endeavors to influence, obstruct, or impede the due and proper administration of the law under which such proceeding is being had * * *

"Shall be fined not more than $5,000 or imprisoned not more than five years, or both."

poration, a Detroit steel producer, under a private discount arrangement.

In April, 1962, Joseph G. Smeraldi, assistant attorney in charge of the Cleveland office of the Federal Trade Commission, made an investigation of McLouth's discount practices, suspecting illegal price discrimination under the Clayton Act, as amended by the Robinson-Patman Act, 15 U.S.C. § 13(a). His investigation of McLouth revealed certain debit and credit memoranda in favor of Donovan for fictitious extra processing and freight equalization. Smeraldi then went to the Donovan plant in Toledo where he met with Fruchtman and asked to see all invoices showing purchases of steel by Donovan from McLouth during the years 1960–1962. Fruchtman complied by submitting, along with other records, false invoices purporting to show the sale of steel to Canadian companies. This steel had in fact been sold domestically. The discounts granted by McLouth to Donovan were not prohibited under the Clayton Act on steel destined for sale outside the United States.

There is testimony that prior to Smeraldi's visit Fruchtman had learned of the Federal Trade Commission investigation and had directed Milton Cohen, Donovan's plant manager, to alter a batch of sales invoices by inserting the names of certain Canadian companies as the consignees for large quantities of steel. It is admitted that these invoices, which Fruchtman made available to Smeraldi, were false.

Based in part on his examination of the false invoices, Smeraldi reported there was no evidence of Clayton Act violations and the Federal Trade Commission closed its investigation.

■ Although the parties are in disagreement about the effect of the charge to the jury, we conclude from our examination of the record that the trial judge found that the investigation conducted by Smeraldi was a "proceeding" within the terms of 18 U.S.C. § 1505 and, in practical effect, so instructed the jury. We find no error on this score. The definition of "proceeding" as used in the statute was a question of law to be determined by the court rather than the jury.

■ We also find no merit in appellant's contention that the word "proceeding" refers only to those steps before a federal agency which are juridical or administrative in nature. The trial judge correctly held that "proceeding" is a term of broad scope, encompassing both the investigative and adjudicative functions of a department or agency. Rice v. United States, 356 F.2d 709, 715 (8th Cir. 1966); United States v. Batten, 226 F.Supp. 492 (D.C.D.C. 1964); United States v. Brumfield, 85 F.Supp. 696 (W. D.La.1949).

■ At trial, the district judge permitted the Government to amend the indictment. The original indictment fairly stated the facts upon which the charges were based, but in describing the investigation conducted by Smeraldi it was erroneously stated that he was proceeding under Section 13a instead of Section 13 (a) of Title 15, United States Code. Appellant has not demonstrated that he was misled or prejudiced by reason of the amendment. See United States v. Mills, 366 F.2d 512 (6th Cir. 1966). The amendment was a non-prejudicial change of form and was properly permitted to be made. Russell v. United States, 369 U.S. 749, 770, 82 S.Ct. 1038, 8 L.Ed.2d 240 (1962); Federal Rules of Criminal Procedure 7(c).

■ Appellant also raises a Jencks Act question. After Smeraldi and an agent for the Internal Revenue Service testified for the Government, appellant moved for production of all statements available to him under the Jencks Act, 18 U.S.C. § 3500. He requested in particular the handwritten notes of interviews conducted by these agents. Both Smeraldi and the IRS agent testified that their notes had been destroyed several months before trial. There was no evidence that they were destroyed to prevent their examination by appellant, and the reports which had been compiled

from the handwritten notes were made available to appellant's counsel. Since it is not shown that the notes were destroyed for an ulterior purpose and the same information was available to appellant in the reports themselves, the trial judge correctly refused to strike the agents' testimony. Killian v. United States, 368 U.S. 231, 82 S.Ct. 302, 7 L. Ed.2d 256 (1961); Rosenberg v. United States, 360 U.S. 367, 371, 79 S.Ct. 1231, 3 L.Ed.2d 1304 (1959); United States v. Greco, 298 F.2d 247 (2nd Cir. 1965).

Appellant also contends that all evidence which was obtained directly or indirectly by reason of a tax investigation of the Donovan Company should have been suppressed because it was obtained through abuse of administrative summons by the IRS. This argument is premised on the fact that IRS developed the evidence which established the falsity of the Donovan invoices and recommended to the Department of Justice that Fruchtman be indicted. The records of Donovan were examined for income tax purposes in 1966. During the course of the tax investigation, the FTC file covering the Clayton Act investigation of McLouth and Donovan in 1962 was made available to IRS. This file contained copies of the false invoices which Fruchtman had furnished to the FTC attorney showing the sale of about $30,000,000 worth of steel to Canadian companies. In order to determine whether these sales were actually made and income derived therefrom, IRS obtained statements from Moultane, president of McLouth, and two other McLouth officials pursuant to summonses issued under 26 U.S.C. § 7602. A statement was also obtained from appellant Fruchtman but we understand that this was given voluntarily.

Appellant filed motion to suppress all evidence and leads obtained by IRS, relying on the line of cases of which Abel v. United States, 362 U.S. 217, 80 S.Ct. 683, 4 L.Ed.2d 668 (1960), and Hinchcliff v. Clarke, 371 F.2d 697 (6th Cir. 1967), are typical. These cases restate the recognized rule that an administrative summons may not be used for the purpose of gathering evidence in a criminal case. The motion to suppress was denied and it is argued by appellant that, at the very least, the court should have held a hearing to determine the merits of the motion. We disagree. A careful examination of the record, including Exhibit 18 which was prepared by an IRS agent for use within that organization, fails to reveal any abuse of process. IRS had the statutory right, in fact the duty, to make such investigation, using its summons power, as was necessary to develop the facts in regard to Donovan's civil tax liability. See DiPiazza v. United States, 415 F.2d 99 (6th Cir. 1969); United States v. Michigan Bell Telephone Co., 415 F.2d 1284 (6th Cir. 1969); Wild v. United States, 362 F.2d 206 (9th Cir. 1966). So long as such investigation is confined within the limitations of the department's statutory authority, there is no prohibition against another department of government having the benefit of information developed in the IRS investigation. We do not find that the IRS investigation here exceeded the limits necessary to ascertain Donovan's tax situation.

The confidential IRS report (Exhibit 18) was submitted to the district judge by the Government for in camera inspection and he made it available to appellant's counsel under a protective order limiting its use by counsel to this case only. Counsel was directed not to disclose this exhibit or to reveal its contents to appellant or to other counsel representing appellant in other proceedings. The district judge also directed that for the purpose of appeal access to Exhibit 18 would be granted only to counsel for appellant and counsel for the Government. Pending disposition of the appeal, this Court entered an order that Exhibit 18 would not be printed as part of the appendix but that copies of the document would be sealed in an envelope and filed by appellant with the clerk of this Court for the Court's in camera inspection. Our order also contained the same admonition to appellant's counsel about revealing the contents of the document to

any other person, and further provided that briefs in which Exhibit 18 was discussed would be sealed by the clerk of this Court and marked for in camera inspection.

The Government requests that the terms of the protective order in regard to this document be continued in effect. This request is granted. Exhibit 18 makes reference to a related investigation now pending in IRS and obviously was prepared for the benefit of IRS personnel. Since the document has been made available to appellant's counsel for use in this case, appellant's rights have been fully protected. The terms of the protective order entered by the district court and by this Court will be continued in effect and the clerk of this Court will carry out this directive.

Finding no error prejudicial to appellant, the judgment is affirmed.